IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT JAMES McCABE | ) | |
| | ) | CRIMINAL NO. 2:19-cr-171 |
| and | ) | |
| | ) | |
| GERARD FRANCIS BOYLE, | ) | |
| | ) | |
| Defendants. | ) | |

**Government's Omnibus Response in Opposition
to Defendants' Pretrial Motions**

# Table of Contents

Page

Argument ........................................................................................................ 4

I.   The indictment properly alleges illicit bribery arrangements that remain unlawful under *McDonnell*. ....................................................................................... 4

    A.   The indictment properly alleges bribery-related offenses in Counts 1–10. .............. 4

    B.   The indictment sufficiently alleges that the defendants exchanged things of value in return for official acts relating to government contracts. ........................... 6

    C.   Under governing law, the indictment does not need to allege a one-to-one relationship between each thing of value and each official act. ............................. 13

    D.   Boyle's other arguments in favor of dismissal are not persuasive. ........................ 18

II.  The indictment properly alleges bribery offenses relating to campaign contributions. ................................................................................................... 19

III. Count 11 properly alleges conspiracy to commit money laundering. .............................. 27

    A.   The indictment sufficiently alleges unlawful bribery arrangements based on both personal benefits and campaign contributions. ................................................. 27

    B.   Count 11 does not present a merger problem because bribery and money laundering to conceal bribery are distinct offenses. ................................................. 31

    C.   Boyle's reliance on the Supreme Court's decision in *Santos* is misplaced. ........... 35

IV.  The Court should deny McCabe's motion *in limine* to exclude evidence that he used campaign contributions for his personal benefit. ...................................................... 37

    A.   McCabe's personal use of campaign funds is highly relevant evidence of criminal intent. ................................................................................................. 40

    B.   McCabe does not identify any risk of *unfair* prejudice arising from the challenged evidence. ................................................................................. 41

    C.   The evidence is not subject to Rule 404(b)'s limitations on proof of prior bad acts because it is intrinsic to the charged bribery schemes. ..................................... 43

    D.   Alternatively, the proposed evidence is admissible under Rule 404(b). ................. 44

V.     The defendants have not satisfied the requirements for obtaining a bill of
       particulars. ................................................................................................................ 45

VI.    The Court should deny Boyle's motion to sever. ............................................................. 47

       A.     The indictment charges two distinct bribery schemes. ............................................ 47

       B.     The indictment properly joins counts and defendants. ............................................ 48

       C.     The Court can easily minimize any risk of spillover prejudice. .............................. 54

Conclusion ........................................................................................................................................ 56

The defendants have filed pretrial motions seeking to dismiss the pending indictment, to limit the government's trial evidence, to obtain a bill of particulars, and to sever the case.  (ECF Nos. 34–35, 37–39, 42, 44, 46.)  For the reasons appearing below, the Court should deny the motions and this matter should proceed to trial.

Argument

I.    **The indictment properly alleges illicit bribery arrangements that remain unlawful under *McDonnell*.**

Both defendants have moved to dismiss the indictment on the assertion that it fails to allege an unlawful *quid pro quo* arrangement within the meaning of *McDonnell v. United States*, 136 S. Ct. 2355 (2016).  (ECF Nos. 34, 44.)  Because the indictment complies with both *McDonnell* and governing Circuit precedent, the Court should deny the motions.

A.    **The indictment properly alleges bribery-related offenses in Counts 1–10.**

To meet the guarantees of the Fifth and Sixth Amendments to the Constitution, an indictment is sufficient if it (i) contains the elements of the offense charged, (ii) fairly informs a defendant of the charge, and (iii) enables a defendant to plead double jeopardy as a bar to future prosecutions for the same offense.  *See Hamling v. United States*, 418 U.S. 87, 117 (1974).  An indictment that tracks the statutory language is normally sufficient if it contains all the elements and is accompanied by a statement of facts that adequately apprises the defendant of the charges against him.  *United States v. Mathis*, 932 F.3d 242, 257 (4th Cir.), *cert. denied sub nom. Uhuru v. United States*, 140 S. Ct. 639 (2019); *United States v. Palin*, 874 F.3d 418, 424 (4th Cir. 2017).  The indictment easily satisfies these requirements.

Counts 3–7 charge the defendants with honest-services mail fraud, in violation of 18 U.S.C. § 1341.  Counts 1–2 charge them with conspiracy to commit that offense, in violation of 18 U.S.C. § 1349.  To commit the substantive offense of honest-services mail fraud, the

4

government must prove that (1) a defendant knowingly devised or participated in a scheme to defraud the public of its right to the honest services of a public official through bribery, and (2) in advancing, furthering, or carrying out the scheme to defraud, the defendant misused the mails.  *See United States v. Pinson*, 860 F.3d 152, 168 (4th Cir. 2017) (citing *Skilling v. United States*, 561 U.S. 358, 368 (2010)); *United States v. Wynn*, 684 F.3d 473, 477–78 (4th Cir. 2012).[1] A conspiracy to commit mail fraud has two elements:  "(1) that two or more persons agreed to commit [mail] fraud; and (2) that at some time during the conspiracy, the defendant had knowledge of the criminal objective of the agreement and willfully joined the conspiracy with the intent to further its unlawful purpose."  *United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017).

　　　Count 10 of the indictment charges McCabe with Hobbs Act extortion under color of official right, in violation of 18 U.S.C. § 1951, while Counts 8–9 charge McCabe and Boyle with conspiracy to commit that offense.  The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C. § 1951(b)(2).  To prove the substantive offense of extortion under color of official right, the government "need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts."  *United States v. Ocasio*, 750 F.3d 399, 409 (4th Cir. 2014), *aff'd*, 136 S. Ct. 1423 (2016) (quoting *Evans v. United States*, 504 U.S. 255, 268

---

[1] To convict, the jury must also find that the defendants acted with intent to defraud and that the scheme or artifice to defraud involved material misrepresentations or concealment, although the Fourth Circuit has not framed these as standalone elements of the offense.  *See United States v. Brandon*, 298 F.3d 307, 311 (4th Cir. 2002); *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000); *see also* Kevin F. O'Malley, et al., 2A Fed. Jury Prac. & Instr. § 47:03 (6th ed. updated through Feb. 2020).

(1992)).  Thus, Hobbs Act extortion under color of official right is "the rough equivalent of ... taking a bribe."  *Evans*, 504 U.S. at 260 (internal quotation marks omitted).  To prove a Hobbs Act conspiracy, the government need only show that the defendants agreed to commit acts which, if performed, would have satisfied the elements of the substantive offense.  *United States v. Buffey*, 899 F.2d 1402, 1403 (4th Cir. 1990); *see also Ocasio*, 136 S. Ct. at 1429 ("[A] defendant may be convicted of conspiring to violate the Hobbs Act based on proof that he entered into a conspiracy that had as its objective the obtaining of property from another conspirator with his consent and under color of official right.").  No proof of an overt act is required.  *Ocasio*, 750 F.3d at 410 n.12.

Counts 1–10 clearly allege these basic elements, and the defendants' motions do not contend otherwise.[2]  Instead, the defendants argue that the indictment fails to allege an impermissible bribery relationship between McCabe and Conspirator #1 (Counts 1, 3–4, and 8) and between McCabe and co-defendant Boyle (Counts 2, 5–7, and 9).  For the reasons appearing below, this argument is unavailing.

### B.     The indictment sufficiently alleges that the defendants exchanged things of value in return for official acts relating to government contracts.

To prove a bribery offense against McCabe, the government must establish that he "committed or agreed to commit an 'official act' in exchange for" a thing of value.  *McDonnell*, 136 S. Ct. at 2365.  Likewise, to prove a bribery offense against Boyle, the government must establish that he had the "specific intent to give … something of value in exchange for an official act."  *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404–05 (1999).  In

---

[2] The government addresses the sufficiency of Count 11 separately.  *See infra* Part III.

other words, the federal bribery laws "prohibit[] *quid pro quo* corruption—the exchange of a thing of value for an 'official act.'"  *McDonnell*, 136 S. Ct. at 2372.

On the *quid* side of the ledger, the indictment alleges a plethora of things of value given to McCabe.  These include "gifts, food, cash, travel, entertainment, campaign contributions, in-kind political donations, and other things of value" given to McCabe by Conspirator #1 and Boyle.  (Indict. at 3 ¶ 7.)  The defendants do not contest that these personal benefits properly qualify as things of value under the federal bribery laws.[3]

On the *quo* side of the ledger, the indictment is extremely detailed about McCabe's official acts.  More specifically, it lays out two distinct schemes.  First, it alleges that Conspirator #1 "was the Chief Executive Officer of Company A, a Louisiana-based company that provided food services management to the Norfolk City Jail."  (Indict. at 2 ¶ 4.)  The indictment then alleges that "[f]rom in or about 1994 through in or about December 2016, McCabe requested and received free catering, travel, campaign contributions, entertainment, gift cards, and personal gifts from Conspirator #1 and, in exchange, McCabe performed specific official acts and acts on an as-needed basis related to Company A's food services contract with

---

[3] To be sure, the type of *proof* varies depending on the nature of the thing of value.  In a personal-benefit case, the illicit agreement between bribe recipient and bribe payor "need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain."  *McDonnell*, 136 S. Ct. at 2371.  In a campaign-contribution case, by contrast, the agreement must involve "an explicit promise or undertaking by the official to perform or not to perform an official act."  *McCormick v. United States*, 500 U.S. 257, 273 (1991).

"Explicit" in this context simply means that the agreement must relate to a "specific requested exercise of … official power."  *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) (quoting *Evans*, 504 U.S. at 258).  So long as the agreement is "clear and unambiguous," *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992), it satisfies the explicitness requirement of *McCormick*.  *See infra* Part II.

the Norfolk Sheriff's Office." (*Id.* at 4 ¶ 13.)[4]  Second, the indictment alleges that co-defendant

Boyle was the CEO of a company that "provide[d] medical services to the inmates of the Norfolk

City Jail." (*Id.* at 2 ¶ 5.)  It further alleges that "[s]tarting in or about January 2004 through in or

about December 2016, McCabe and Boyle engaged in a transactional relationship and a knowing

course of conduct during which Boyle agreed to give gifts and things of value to McCabe and, in

exchange for which, McCabe agreed to exercise his official authority to take actions that were

favorable to Boyle's company in connection with its medical services contract." (*Id.* at 5 ¶ 17.)

The indictment thus alleges two textbook bribery relationships.  In exchange for

favorable actions taken on City of Norfolk contracts, Conspirator #1 and Boyle gave McCabe

things of value, including both personal benefits and campaign contributions.  The indictment

then details exactly what those official acts were.  As to Company A and Conspirator #1, it

alleges that McCabe, in his capacity as Sherriff:

a.   [E]nsured that Company A was selected to serve as the food services vendor for the Norfolk City Jail;

b.   [E]xecuted contracts on behalf of the Norfolk Sheriff's Office conferring financial benefits on Company A;

c.   [R]epeatedly exercised the options left to his discretion to extend Company A's contract beyond its original term to prevent Company A from having to participate in a new RFP;

d.   [G]ranted Company A [cost of living adjustment] increases and other terms that financially benefited Company A; and

e.   [A]dvocated for and exercised waivers and other contract provisions containing favorable terms for Company A.

---

[4] While the defendants' names appear in all capital letters in the indictment, the government uses standard capitalization throughout this filing.

(Indict. at 18 ¶ 8.)  The indictment is equally specific as to Boyle and his company, CCS.  It

alleges that McCabe, in his capacity as Sherriff:

a.      [D]isclosed and directed others to disclose confidential bidding
        information to Boyle and other CCS employees;

b.      [E]nsured that CCS was selected to serve as the medical services company
        for the Norfolk City Jail;

c.      [E]xecuted contracts on behalf of the Norfolk Sheriff's Office conferring
        substantial financial benefits on CCS;

d.      [R]epeatedly exercised options left to his discretion to extend CCS's
        contract beyond its original term to prevent CCS from having to
        participate in a new RFP;

e.      [A]warded staffing cost adjustments to CCS that increased the value of its
        contract;

f.      [G]ranted [cost of living adjustment] increases and other terms that
        financially benefited CCS;

g.      [E]xercised waivers and other contract provisions containing favorable
        terms for CCS;

h.      [A]greed to alter the terms of the contract to decrease CCS's obligation to
        provide prescription drugs to certain inmates upon their release from the
        Norfolk City Jail; and

i.      [W]rote numerous letters of reference in support of CCS.

(Indict. at 21–22 ¶ 16.)  These allegations, which are repeated in connection with each

enumerated count, easily satisfy *McDonnell*'s definition of what constitutes an official act.  (*See*

Indict. at 17, 20, 23–28.)

Under the federal bribery statute, an "official act" is "any decision or action on any

question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or

which may by law be brought before any public official, in such official's official capacity, or in

such official's place of trust or profit." 18 U.S.C. § 201(a)(3).[5] *McDonnell* elaborated on this definition in two important ways.

First, the government "must identify a 'question, matter, cause, suit, proceeding or controversy' that 'may at any time be pending' or 'may by law be brought' before a public official." *McDonnell*, 136 S. Ct. at 2368 (quoting 18 U.S.C. § 201(a)(3)). Those terms "connote a formal exercise of governmental power, such as a lawsuit, hearing, or administrative determination." *Id.* at 2369. That is, they refer to "the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete." *Id.* To be pending or potentially brought by law before a public official, a question or matter must be "focused" and "concrete." *Id.*; *see also id.* at 2372 (describing a qualifying matter as "something specific and focused"). Because the federal bribery statute uses the phrase "which may at any time be pending, or which may by law be brought before any public official," 18 U.S.C. § 201(a)(3), the matter need not be pending before the public official who is performing the official act. Thus, the official involved in the bribery scheme need not have ultimate control over the outcome of the question or matter. Instead, "the matter may be pending either before the public official who is performing the official act, or before another public official." *McDonnell*, 136 S. Ct. at 2369.

Second, the government must show that the public official "made a decision or took an action" on the question or matter. *Id.* at 2368. While merely "hosting an event, meeting with other officials, or speaking with interested parties" does not, standing alone, meet this requirement, more overt advocacy can. *Id.* at 2370. For example, *McDonnell* clarifies that using

---

[5] While the issue is somewhat unsettled, the government accepts for purposes of this litigation that the definition of "official act" appearing in § 201(a)(3) applies to honest-services mail fraud and Hobbs Act extortion. *See McDonnell*, 136 S. Ct. at 2365–66 (noting that the district court had charged the jury there in accordance with such a rule).

an official position "to exert pressure on another official to perform an 'official act,' or to advise another official, knowing or intending that such advice will form the basis for an 'official act,'" qualifies as an official act under the federal bribery statute. *Id.* at 2372.  Additionally, the official act need not be the final decision on the question or matter.  Rather, it can be "a qualifying step, such as narrowing down [a] list of potential research topics" for an official government study.  *Id.* at 2370.

Applying these standards, courts have easily concluded that decisions on procurement matters—including both final decisions and "qualifying steps"—are official acts under *McDonnell*.  The Fourth Circuit has twice held as much.  *See United States v. Pinson*, 860 F.3d 152, 168 (4th Cir. 2017) ("Givens's signing of the contract qualifies as an 'official act,' even under the more restrictive definition that [*McDonnell*] recently adopted when interpreting the term in a separate bribery statute."); *United States v. Conrad*, 760 F. App'x 199, 209 (4th Cir. 2019) (rejecting the assertion "that facilitating the award of government contracts—and then maintaining those contracts—is not a decision or action 'on' a question or matter" (citing *United States v. Repak*, 852 F.3d 230, 254 (3d Cir. 2017))).  Other courts are in accord.  *See Cordaro v. United States*, 933 F.3d 232, 242 (3d Cir. 2019) ("Entering into contracts is 'a formal exercise of governmental power' that falls 'within the specific duties of an official's position.'" (quoting *McDonnell*, 136 S. Ct. at 2369)); *United States v. Spellissy*, 710 F. App'x 392, 395 (11th Cir. 2017) ("[C]onduct that involved the awarding of specific government contracts up for bid … still meets the definition of 'official act' after *McDonnell*."); *United States v. Skelos*, 707 F. App'x 733, 739 (2d Cir. 2017) ("Using one's influence as a high ranking state official to push through county legislation and to bestow a county-issued contract are indisputably formal exercises of governmental power constituting official acts under *McDonnell*."); *Miserendino v.*

*United States*, 307 F. Supp. 3d 480, 490 (E.D. Va. 2018) (concluding "that the awarding of

contracts, subcontracts, and task orders" is an official act under *McDonnell*).  The indictment's

allegations about official acts are therefore sufficient under *McDonnell* and its progeny.

   To the extent that the defendants argue that the indictment does not allege illicit bribery

relationships, such an argument is entirely without merit.  The indictment unambiguously alleges

that McCabe, Conspirator #1, and Boyle exchanged things of value in return for official acts,

which is the core *quid pro quo* misconduct prohibited by the federal bribery laws.  For example,

the indictment states:

- "In these schemes, McCabe used his official position as the Norfolk Sheriff
  to enrich himself by soliciting things of value including, but not limited to,
  gifts, food, cash, travel, entertainment, campaign contributions, in-kind
  political donations, and other things of value from Conspirator #1, Boyle,
  and other individuals with interests connected to the Norfolk Sheriff's office
  and the City of Norfolk.  In exchange for these items, McCabe agreed to
  perform and performed official actions, including certain specific official
  actions and other official actions on an as-needed basis to benefit Boyle,
  Conspirator #1, and others."  (Indict. at 3 ¶ 7.)

- "After McCabe disclosed confidential bid information to Conspirator #1,
  the conspirators established an illegal *quid pro quo* relationship.  From in
  or about 1994 through in or about December 2016, McCabe requested and
  received free catering, travel, campaign contributions, entertainment, gift
  cards, and personal gifts from Conspirator #1 and, in exchange, McCabe
  performed specific official acts and acts on an as-needed basis related to
  Company A's food services contract with the Norfolk Sheriff's Office."
  (*Id.* at 4 ¶ 13.)

- "Starting in or about January 2004 through in or about December 2016,
  McCabe and Boyle engaged in a transactional relationship and a knowing
  course of conduct during which Boyle agreed to give gifts and things of
  value to McCabe and, in exchange for which, McCabe agreed to exercise
  his official authority to take actions that were favorable to Boyle's company
  in connection with its medical services contract."  (*Id.* at 5 ¶ 17.)

These formulations, which expressly describe *quid pro quo* corruption, are more than sufficient

to allege offenses related to bribery.  *See United States v. Jennings*, 160 F.3d 1006,

1019 (4th Cir. 1998) (explaining that "a court need not resort to Latin to … explain that the defendant must have intended for the official to engage in some specific act (or omission) or course of action (or inaction) in return for the charged payment"); *see also United States v. Giles*, 246 F.3d 966, 973 (7th Cir. 2001) (affirming jury instruction where, "although the magic words *quid pro quo* were not uttered, a simplified version of the concept, the idea that 'you get something and you give something,' was").

Nor is it necessary to allege that the defendants' *quid pro quo* arrangements were expressed aloud or in writing.  Instead, "[s]uch an intent may be established by circumstantial evidence." *Jennings*, 160 F.3d at 1014 (citing *United States v. Massey*, 89 F.3d 1433, 1439 (11th Cir. 1996); *United States v. Biaggi*, 909 F.2d 662, 684 (2d Cir.1990)); *see also United States v. Hamilton*, 701 F.3d 404, 409 (4th Cir. 2012) (explaining that bribery-related intent "can be implied—and it is the jury's role to make such factual inferences" (citing *United States v. Engle*, 676 F.3d 405, 418 (4th Cir. 2012))).

Accordingly, the indictment sufficiently alleges unlawful bribery relationships.

### C.   Under governing law, the indictment does not need to allege a one-to-one relationship between each thing of value and each official act.

The defendants' main attack on the indictment is to contend that it fails to tie specific personal benefits or campaign contributions to particular official acts.  The defendants' proffered requirement—a one-to-one relationship between each thing of value and each official act—flatly contravenes governing precedent.

Courts have long recognized that bribery can arise through a course of conduct wherein both the bribe payor and the bribe recipient understand that things of value are being exchanged for official acts.  Courts sometimes refer to this as the "stream of benefits" or "as opportunities

13

arise" method of committing bribery.  These sorts of *quid pro quo* relationships were unlawful before *McDonnell* and they remain illegal today.

The key case in this Circuit is *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998). There, the Court expressly held that "[t]he quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor." *Id.* at 1014 (internal quotation marks omitted).  *Jennings* further clarified that "the government need not show that the defendant intended for his payments to be tied to specific official acts." *Id.*  The Fourth Circuit has continued to adhere to *Jennings* in subsequent cases.  *See United States v. Jefferson*, 674 F.3d 332, 359 (4th Cir. 2012), *as amended* (Mar. 29, 2012) ("[I]t would be impossible—and it is unnecessary—to link every dollar paid to one of the Jefferson family companies to a specific meeting, letter, trip, or other action by Jefferson to fulfill his end of a corrupt bargain."); *United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004).

The Fourth Circuit's approach to stream-of-benefits bribery in *Jennings* has become the consensus approach in the courts of appeals.  *See, e.g.*, *United States v. McDonough*, 727 F.3d 143, 154 (1st Cir. 2014) (citing *Jennings*); *United States v. Terry*, 707 F.3d 607, 612 (6th Cir. 2014) ("The agreement between the public official and the person offering the bribe need not spell out which payments control which particular official acts."); *United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013) ("Once the quid pro quo has been established, ... the specific transactions comprising the illegal scheme need not match up this for that."); *United States v. Ciavarella*, 716 F.3d 705, 730 (3d Cir. 2013) (proof of bribery "does not require that each *quid*, or item of value, be linked to a specific *quo*, or official act" (quoting *United States v. Wright*, 665 F.3d 560, 568 (3d Cir. 2012), *as amended* (Feb. 7, 2012))); *United States v. Redzic*,

14

627 F.3d 683, 692 (8th Cir. 2011) ("[T]he government must present evidence of a quid pro quo, but an illegal bribe may be paid with the intent to influence a general course of conduct.  It was not necessary for the government to link any particular payment to any particular action undertaken by [the defendant]." (citing *Jennings*)); *United States v. Whitfield*, 590 F.3d 325, 353 (5th Cir. 2009) (stating that "the overwhelming weight of authority from this court and our sister circuits supports the conclusion that the law does not require" a one-to-one linkage between payments and official acts (citing *Jennings*)); *United States v. Kincaid-Chauncey*, 556 F.3d 923, 943 (9th Cir. 2009) (citing *Jennings*).

Given the overwhelming weight of this authority, the defendants' challenge to the indictment can only succeed if *McDonnell* somehow changed the governing law.  It did not.  In the first place, *McDonnell* itself involved a stream-of-benefits fact pattern, yet *McDonnell* reiterated that "the public official need not specify the means that he will use to perform his end of the bargain."  136 S. Ct. at 2371.[6]  What's more, before *McDonnell*, the Supreme Court had favorably cited stream-of-benefits cases from other circuits.  *See Skilling*, 561 U.S. at 413 (citing *United States v. Ganim*, 510 F.3d 134, 147–49 (2d Cir. 2007) (Sotomayor, J.); *Whitfield*, 590 F.3d at 352–53; *United States v. Kemp*, 500 F.3d 257, 281–86 (3d Cir. 2007)).  Notably, all three of these cases favorably referenced the Fourth Circuit's opinion in *Jennings*.  *See Ganim*, 510 F.3d at 148; *Whitfield*, 590 F.3d at 350; *Kemp*, 500 F.3d at 282.  In light of this doctrinal history, it would be strange for the Supreme Court to have invalidated a pervasive type of bribery

---

[6] *McDonnell* further stated that a jury may find a public official guilty of a bribery offense where "the public official agreed to perform *an* 'official act' at the time of the alleged quid pro quo."  136 S. Ct. at 2371 (emphasis added).  The indefinite article reinforces the conclusion that there need not be a one-to-one linkage between each payment and each act.  *Cf. McFadden v. United States*, 135 S. Ct. 2298, 2304 (2015) ("When used as an indefinite article, 'a' means '[s]ome undetermined or unspecified particular.'" (quoting Webster's New International Dictionary 1 (2d ed. 1954))).

prosecution entirely without comment.  Instead, the fact "[t]hat Justice Sotomayor, who authored [*Ganim*], joined the Court in *McDonnell* further weakens [the] argument that *McDonnell* silently overruled the stream of benefits theory of bribery."  *United States v. Menendez*, 291 F. Supp. 3d 606, 616 (D.N.J. 2018).  Because *McDonnell* nowhere indicates that the specific official act to be performed must be identified at the time the corrupt bargain is struck, the Fourth Circuit's opinion in *Jennings* remains binding and stream-of-benefits bribery remains unlawful.  *See Tatum v. RJR Pension Inv. Comm.*, 855 F.3d 553, 560 n.5 (4th Cir. 2017) (reiterating that a panel opinion is binding absent an intervening change in the law announced by the Supreme Court or an en banc sitting of the Circuit).

Against this backdrop, four courts of appeals have re-affirmed the viability of stream-of-benefits bribery prosecutions post-*McDonnell*.  *See United States v. Silver*, — F.3d —, 2020 WL 284426, at *12 (2d Cir. Jan. 21, 2020) (rejecting the claim "that the 'as the opportunities arise' theory of bribery does not survive *McDonnell*"); *Woodward v. United States*, 905 F.3d 40, 46 (1st Cir. 2018) ("[T]o convict Woodward, the government did not need to prove a tight nexus between any particular gratuity and a specific official act."); *United States v. Suhl*, 885 F.3d 1106, 1115 (8th Cir.), *cert. denied*, 139 S. Ct. 172 (2018) ("We have explained that it is 'not necessary for the government to link any particular payment to any particular action undertaken by' the government agent, and the bribe 'may be paid with the intent to influence a general course of conduct.'" (quoting *Redzic*, 627 F.3d at 692)); *United States v. Repak*, 852 F.3d 230, 251 (3d Cir. 2017) ("[I]t is sufficient if the public official understands that he is expected, as a result of the payment, to exercise particular kinds of influence or to do certain things connected with his office as specific opportunities arise." (quoting *United States v. Bradley*, 173 F.3d 225, 231 (3d Cir. 1999))).  Numerous district courts are in accord.  *See United States v. Gordon*,

No. 1:17-cr-354 (MHC), 2018 WL 3067739, at *6 (N.D. Ga. June 21, 2018); *United States v. Skelos*, No. 15-cr-317 (KMW), 2018 WL 2849712, at *3 (S.D.N.Y. Jun. 8, 2018); *Miserendino*, 307 F. Supp. 3d at 494; *Menendez*, 291 F. Supp. 3d at 613–16; *United States v. Mangano*, No. 16-cr-540 (JMA), 2018 WL 851860, at *4 (E.D.N.Y. 2018); *United States v. Percoco*, No. 16-cr-776 (VEC), 2017 WL 6314146, at *4–5 (S.D.N.Y. 2017).

In fairness to the defendant, the Second Circuit's recent opinion in *Silver* interpreted *McDonnell* to require a certain degree of specificity about the "*particular* kinds" of official acts involved in a *quid pro quo* relationship.  *See Silver*, 20 WL 284426, at *13 (quoting *Ganim*, 510 F.3d at 144).  On this view, it is not enough for an official to agree to "to take [some or any] official action" in exchange for a thing of value; instead, the official must agree "to take official action on a *specific and focused* question or matter."  *Id.* at *20–21.

Setting aside whether *Silver*'s gloss on *McDonnell* is correct—a point the government does not concede—*Silver* does not help the defendant get to his desired destination.  The indictment in this case does not allege an open-ended agreement under which McCabe would complete some unspecified official act.  Instead, the indictment is crystal-clear that McCabe's illicit arrangements with Conspirator #1 and with Boyle related to just two procurements—a contract for food services and a contract for medical services at the Norfolk jail (as well as various modifications to, and extensions of, those same contracts).  These are precisely the types of narrow, particularized matters that, even on *Silver*'s somewhat aggressive reading of *McDonnell*, properly support a bribery charge.  *See id.* at *23 & n.22 (characterizing an illicit agreement relating to tax abatement and rent stabilization programs, as opposed to "real estate legislation" writ large, as sufficiently "particular" to satisfy *McDonnell*).

17

**D.      Boyle's other arguments in favor of dismissal are not persuasive.**

In light of these authorities, the indictment sufficiently alleges unlawful *quid pro quo*

bribery relationships.  To the extent that Boyle's brief (ECF No. 45) makes additional arguments

attacking the sufficiency of the indictment on *McDonnell* grounds, those claims are unavailing.

To begin, Boyle asserts that the indictment charges him with bribery offenses based on a

series of acts "regardless of if he would have done [them] anyway, or if [they were] in the best

interests of the Norfolk Sheriff's Office or the City of Norfolk."  (ECF No. 45 at 1.)  Neither of

these critiques—which, in any event, the government believes will be inconsistent with the

evidence at trial—amounts to a defect in the indictment.  *See Quinn*, 359 F.3d at 675 (approving

jury instruction that "[i]t is not a defense [to bribery] that the official act sought to be influenced

would have been done anyway regardless of the fact that the bribe was received or accepted");

*United States v. Miller*, 340 F.2d 421, 424 (4th Cir. 1965) ("It is immaterial whether the official

action which the briber seeks to influence is right or wrong, in the sense that it is expected to

result in pecuniary injury to the Government or that it calls upon the bribe recipient to do

something other [than] what he is legally obligated to do.").

Likewise, Boyle contends that the indictment "risks criminalizing 'the traditional

business practice of promoting a favorable business climate by entertaining and doing favors for

potential customers.'"  (ECF No. 45 at 12 (quoting *United States v. Arthur*, 544 F.2d 730, 734

(4th Cir. 1976)).)  The government agrees that good will gifts are not bribes, *Jennings*, 160 F.3d

at 1013–14, and has no objection to so instructing the jury.  But the indictment does not allege

that the defendants exchanged good will gifts.  Instead, it alleges that Conspirator #1 and Boyle

gave McCabe things of value *in exchange for* McCabe's actions on Norfolk contracts—a course

18

of conduct so clearly forbidden that McCabe took steps to conceal it from Norfolk's citizens. (*See* Indict. at 19 ¶ 10, 22 ¶ 18.)

In short, this is not a case where the indictment rests on some exotic theory of criminal liability.  Instead, the indictment alleges two straightforward schemes by which Conspirator #1 and Boyle lined McCabe's pockets, and filled his campaign coffers, in exchange for favorable treatment on government contracts.  These are classic, run-of-the-mill bribery arrangements. The indictment then supplements the allegations in the charged counts with sixteen additional pages of background information, laying out in great detail exactly what benefits were provided to McCabe and what official acts he undertook in return.  Because the indictment sufficiently alleges honest-services mail fraud and Hobbs Act extortion under color of official right, the Court should deny the defendants' motions to dismiss it on *McDonnell* grounds.

## II. The indictment properly alleges bribery offenses relating to campaign contributions.

Both defendants move to strike any allegations in the indictment relating to campaign contributions.  (ECF Nos. 38, 42.)  These motions are without merit.  In *McCormick v. United States,* 500 U.S. 257 (1991), the Supreme Court, noting that campaign contributions are a necessary part of the American political process, held that the Hobbs Act, 18 U.S.C. § 1951, did not apply to a series of campaign contributions that were made as a general expression of support and expectation that a state senator would sponsor certain legislation.  However, as stated by the Court:

> This is not to say that it is impossible for an elected official to commit extortion in the course of financing an election campaign.  Political contributions are of course vulnerable if induced by the use of force, violence, or fear.  *The receipt of such contributions is also vulnerable under the Act as having been taken under color of official right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act.*  In such situations the official asserts that his official conduct will be controlled by the

> terms of the promise or undertaking.  This is the receipt of money by an elected
> official under color of official right with the meaning of the Hobbs Act.

500 U.S. at 273 (emphasis added).

Accordingly, a bribery charge can be premised on a political contribution, provided there is an <u>explicit</u> *quid pro quo*.  The requirement of an explicit *quid pro quo*, as set forth by the Supreme Court in *McCormick*, is meant to assure that legitimate campaign contributions long held to be part of the political process—for example, payments made by a donor to a public official as a general expression of support, or with an expectation that the official will continue to advocate certain positions and sponsor legislation with which the donor agrees—will not subject the public official to criminal prosecution.  But the Supreme Court made clear that a campaign contribution is indeed a bribe when it is made in exchange for an explicit promise or undertaking by a public official to perform or not to perform an official act.  As *McCormick* stated, "[t]his formulation defines the forbidden zone of conduct with sufficient clarity."  *Id.*

Shortly after *McCormick*, the Supreme Court reaffirmed this principle in *Evans v. United States*, 504 U.S. 255 (1992), another campaign contribution case, where the Court rejected the contention that an affirmative act of inducement by a public official, such as a demand, is an element of the offense of extortion "under color of official right" that is prohibited by the Hobbs Act.  *Evans* held that the "Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts."  *Id.* at 268.

Moreover, while the *quid pro quo* in the case of political contributions must be explicit, it does not have to be express.  As stated in the recent decision of *United States v. Menendez*, 291 F. Supp. 3d 606 (D.N.J. 2018), a case involving charges, among others, of conspiracy to commit bribery and honest-services mail fraud against two defendants, including a United States

Senator, "[w]hile the *quid pro quo* must be explicit, it need not be express; political contributions may be the subject of an illegal bribe even if the terms are not formalized in writing or spoken out loud.  As this Court has noted, 'explicit' refers 'not to the form of the agreement between the payor and payee, but the degree to which the payor and payee were aware of its terms .... '"

*Id.* at 624 (internal citations omitted).

      In *United States v. Carpenter*, 961 F.2d 824 (9th Cir. 1992), the Ninth Circuit similarly addressed the explicitness requirement in cases of bribery based on political contributions, making it clear that the explicit *quid pro quo* need not be express:

> Carpenter argues that the explicitness requirement cannot be met unless an official has specifically stated that he will exchange official action for a contribution.  We disagree.  To read *McCormick* as imposing such a requirement would allow officials to escape liability under the Hobbs Act with winks and nods, even when the evidence as a whole proves that there has been a meeting of the minds to exchange official action for money.

> In our view, what *McCormick* requires is that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain....  This understanding need not be verbally explicit.  The jury may consider both direct and circumstantial evidence, including the context in which a conversation took place, to determine if there was a meeting of the minds on a quid pro quo.  As we read *McCormick*, the explicitness requirement is satisfied so long as the terms of the quid pro quo are clear and unambiguous.

961 F.2d at 827.  And in *United States v. Terry*, 707 F.3d 607 (6th Cir. 2013), an honest-services mail fraud case that involved campaign contributions made to a state judge in exchange for official actions, the Sixth Circuit stated that "[a]s most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess.  Motives and consequences, not formalities, are the keys for determining whether a public official entered an agreement to accept a bribe, and the trier of fact is quite capable of deciding the intent with which words were spoken or actions

taken as well as the reasonable construction given to them by the official and the payor."

*Id.* at 613 (internal quotations and citations omitted).

Notably, *Terry* also makes clear that the explicit *quid pro quo* in a bribery case involving political contributions can be an undertaking or promise made by the public official to perform official acts favorable to the payor <u>as opportunities arise</u>.  *Id.* at 614–15.  The Fourth Circuit has held that such a stream of benefits is sufficient to satisfy the *quid pro quo* requirements in bribery cases involving public officials.  In *United States v. Jennings,* 160 F.3d 1006 (4th Cir. 1998), the Court held:

> Bribery requires the intent to effect an exchange of money (or gifts) for specific official action (or inaction), but each payment need not be correlated with a specific official act.  Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action.  In other words, the intended exchange in bribery can be 'this for these' or "these for these," not just "this for that."  Further, it is not necessary for the government to prove that the payor intended to induce the official to perform a set number of official acts in return for the payments.  The quid pro quo requirement is satisfied so long as the evidence shows a 'course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor.'  Thus, all that must be shown is that payments were made with intent of securing a specific *type* of official action or favor in return.  For example, payments may be made with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf.  This sort of 'I'll scratch your back if your scratch mine' arrangement constitutes bribery because the payor made payments with the intent to exchange them for specific official action.

*Id.* at 1014 (emphasis in the original; internal citations and quotations omitted).  In *United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004), the Court reaffirmed its decision in *Jennings* that the *quid pro quo* requirement in a bribery case is satisfied as long as the evidence shows a course of conduct involving favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the payor.  While the bribes in *Jennings* and *Quinn* were not made in the context of political contributions, there is no reason why the Fourth Circuit would not

likewise apply the same principle to such cases—that is, the explicit *quid pro quo* is satisfied when the evidence shows that campaign contributions were made in exchange for a public official taking official actions favorable to the payor as opportunities arise.  In other words, bribery is established when the flow of benefits is "part and parcel of an agreement by the beneficiary to perform public acts for the patron."  *Terry*, 707 F.3d at 615.  Otherwise, it would result in the illogical conclusion, and contrary to the intent of the Supreme Court in *McCormick*, that such an explicit *quid pro quo* is permissible under the law.

The indictment sufficiently alleges an illicit *quid pro quo* relationship between McCabe and Boyle with respect to political contributions."  Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires only that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged."  As stated by the Supreme Court, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."  *Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotation omitted).  Any general description of the offense based on the statutory language must be accompanied with a statement of facts and circumstances that will inform the defendant of the specific offense with which he is charged."  *Id.* at 117–18.

Applying these principles, the Fourth Circuit has held that "[t]o pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense."  *United States v. Williams,* 152 F.3d 294, 299 (4th Cir. 1998).  *Accord United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009); *United*

23

*States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002); *United States v. Loayza*, 107 F.3d 257, 260–62 (4th Cir. 1997); *United States v. Sutton*, 961 F.2d 476, 479 (4th Cir. 1992).

Notably, the government is not required to disclose in an indictment its <u>full</u> theory of the case and <u>all</u> of the evidentiary facts to support it.  "That is not and never has been required at the indictment stage."  *Loayza*, 107 F.3d at 261 (quoting *United States v. Arlen*, 947 F.2d 139, 145 n.7 (5th Cir. 1991)); *United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982) (also noting that "even a bill of particulars cannot be required to compel revelation of the full theory of the case or all of the evidentiary facts").

Measured by this standard, it is clear that the indictment in the present case sufficiently alleges an illicit *quid pro quo* relationship between McCabe and Conspirator #1, and between McCabe and Boyle, with respect to political contributions.  An examination of the relevant counts makes this conclusion obvious.

Count 1 alleges that McCabe, the former Norfolk Sheriff, and Conspirator #1, the Chief Executive Officer of a company that provided food services management to the inmates at the Norfolk City Jail, conspired to commit honest-services mail fraud, in violation of 18 U.S.C. § 1349.  Counts 3 and 4 allege substantive honest-services mail fraud violations by McCabe and Conspirator #1.  Count 8 charges McCabe with conspiring with Conspirator #1 to commit a violation of 18 U.S.C. § 1951, the Hobbs Act.

Each of these counts involving McCabe and Conspirator #1 sets forth the elements of the charged offense and incorporates by reference the General Allegations section of the indictment, including a section entitled "McCabe's *Quid Pro Quo* Relationship with Conspirator #1." Specifically, Paragraph 13 of the General Allegations section lists many things of value, including campaign contributions, that McCabe requested and received from Conspirator #1 in

24

exchange for which McCabe agreed to exercise his official authority to take actions that were favorable to Conspirator #1's company in connection with the food services contract.  Notably, the statutory citations at the conclusion of Counts 1, 3, and 4 include a reference to 18 U.S.C. § 1346, which states that for purposes of various statutes, including mail fraud and conspiracy to commit mail fraud, a "scheme or artifice to defraud" includes "a scheme or artifice to deprive another of the intangible right of honest services."  In fact, Count 1 alleges that McCabe and Conspirator #1 conspired to devise a scheme and artifice "to defraud the citizens of Norfolk through bribery."  Accordingly, it is clear that the indictment sufficiently alleges an illicit *quid pro quo* relationship between McCabe and Conspirator #1 with respect to political contributions.

Count 2 alleges that McCabe and Boyle, the founder and Chief Executive Officer of Correct Care Solutions, a vendor that provided medical services to the inmates at the Norfolk City Jail, conspired to commit honest-services mail fraud, in violation of 18 U.S.C. § 1349. Paragraph 2 of Count 2 properly sets forth the elements of the offense of mail fraud in 18 U.S.C. § 1341 and alleges that McCabe and Boyle conspired to commit that offense.  As in Count 1, the statutory citations at the conclusion of Count 2 includes a reference to 18 U.S.C. § 1346, which, as previously noted, makes it clear that for purposes of various statutes, including mail fraud and conspiracy to commit mail fraud, a "scheme or artifice to defraud" includes "a scheme or artifice to deprive another of the intangible right of honest services."  In fact, Count 2 alleges that McCabe and Boyle conspired to devise a scheme and artifice "to defraud the citizens of Norfolk through bribery."

There is no doubt, then, that Count 2 properly sets forth the elements of the offense of conspiracy to commit honest-services mail fraud and informs the defendants of exactly the offense with which they are charged.  Again, the underlying facts and circumstances of the

25

offense charged in Count 2 are set out in great detail.  Paragraph 1 of Count 2 incorporates by reference the General Allegations section of the indictment, which includes 63 paragraphs, including a section entitled "McCabe's *Quid Pro Quo* Relationship with Boyle."  Paragraph 17 of the General Allegations section lists many things of value, including campaign contributions, that Boyle agreed to give to McCabe in exchange for which McCabe agreed to exercise his official authority to take actions that were favorable to Boyle's company in connection with its medical services contract.  Paragraphs 17–59 meticulously chronicle the alleged illicit transactional relationship and knowing course of conduct between the defendants in a manner so thorough as to easily enable the defendants to plead double jeopardy in any subsequent prosecutions for the same offense.

Counts 5–7 allege substantive honest-services mail fraud violations by McCabe and Boyle.  Again, the elements of mail fraud are spelled out, reference is made to 18 U.SC. § 1346 to include the deprivation of the intangible right of honest services, and the General Allegations section of the indictment, including Boyle making political contributions to McCabe, are incorporated by reference.  Moreover, each of these three counts sets forth a specific mailing in furtherance of the scheme.  Accordingly, the defendants know exactly the offenses with which they are charged in these counts, as well as the underlying facts and circumstances.

Count 9 charges McCabe with conspiring with Boyle to commit a violation of the Hobbs Act, 18 U.S.C. § 1951, essentially by McCabe obtaining property to which he was not entitled from Boyle, with Boyle's consent, under color of official right.  The elements of § 1951 are properly set forth, and the factual underpinnings are supplied by the incorporation by reference of the General Allegations section of the indictment.  Accordingly, in this count, as in the others, the defendants know exactly the offense with which they are charged and the underlying facts

and circumstances, including political contributions as a thing of value made by Boyle to McCabe.

Finally, the defendants argue that references to campaign contributions in the indictment must be stricken because the phrase "explicit *quid pro quo*" is not included. This claim is misplaced. The indictment properly sets forth the elements of the <u>offenses charged</u>, which as noted are conspiracy to commit honest-services mail fraud, honest-services mail fraud, conspiracy to obtain property under color of official right, obtaining property under color of official right, and conspiracy to commit money laundering. The elements of these offenses are precisely and properly stated in the respective counts, and the elements themselves do not, and need not, include an explicit *quid pro quo* with respect to campaign contributions. While the government fully recognizes that it must prove an explicit *quid pro quo* in the case of campaign contributions as a thing of value, and the jury will be so instructed, it is not necessary to plead or otherwise include that exact phrase in the indictment, as it is simply not an element of any of the offenses that are charged. *See Jennings*, 160 F.3d at 1019 (explaining that "a court need not resort to Latin" to explain an illicit bribery relationship).

## III.   Count 11 properly alleges conspiracy to commit money laundering.

Both defendants move to dismiss Count 11, which alleges that they conspired to commit money laundering in violation of 18 U.S.C. § 1956(h). (ECF Nos. 39, 42.) These motions are unavailing for the reasons appearing below.

### A.   The indictment sufficiently alleges unlawful bribery arrangements based on both personal benefits and campaign contributions.

Under 18 U.S.C. § 1956(h), "[a]ny person who conspires to commit any offense defined in" the two money-laundering statutes—18 U.S.C. §§ 1956 and § 1957— is guilty of a federal

crime.  Count 11 alleges that McCabe and Boyle conspired to violate § 1956(a)(1)(B)(1), which

states:

> Whoever, knowing that the property involved in a financial transaction represents
> the proceeds of some form of unlawful activity, conducts or attempts to conduct
> such a financial transaction which in fact involves the proceeds of specified
> unlawful activity … knowing that the transaction is designed in whole or in
> part … to conceal or disguise the nature, the location, the source, the ownership, or
> the control of the proceeds of specified unlawful activity …shall be [guilty of an
> offense against the United States].

18 U.S.C. § 1956(a)(1)(B)(1).  By cross-reference, the phrase "specified unlawful activity"

includes mail fraud.  *See* 18 U.S.C. § 1956(c)(7)(A) (defining specified unlawful activity by

cross-reference to offenses listed in 18 U.S.C. § 1961(1)); 18 U.S.C. § 1961(1)(B) (including the

mail-fraud statute, 18 U.S.C. § 1341).[7]

To prove a conspiracy to commit money laundering, the government must show that

"(1) an agreement to commit money laundering existed between [two] or more persons; (2) the

defendant knew that the money laundering proceeds had been derived from illegal activity; and

(3) the defendant knowingly and voluntarily became a part of the conspiracy."  *United States v.

Singh*, 518 F.3d 236, 248–49 (4th Cir. 2008) (citing *United States v. Alerre*, 430 F.3d 681, 693–

94 (4th Cir. 2005)).  It is not necessary to prove that money was actually laundered, nor is it

necessary to prove that an overt act was committed in furtherance of the conspiracy.  *Alerre*,

430 F.3d at 693–94.

The allegations underlying Count 11 relate to a $12,500 campaign contribution that

Boyle gave to McCabe in April 2016.  According to the indictment, while attending McCabe's

---

[7] Count 11 does not state that the specified unlawful activity included Hobbs Act extortion,
although that offense, too, so qualifies.  *See* 18 U.S.C. § 1961(1)(B) (including the Hobbs Act,
18 U.S.C. § 1951).

annual golf tournament, Boyle wrote McCabe a personal check for that amount, but left the "pay to the order of line" blank and falsely wrote in the memo line that the check was for "consulting." (Indict. at 13 ¶ 48.) McCabe then immediately handed the check to a confidant—identified in the indictment as Conspirator #2—and instructed that person to deposit the check into his or her bank account. (*Id.* ¶ 49.) Conspirator #2 then used the money to reimburse three friends for a total in $6,000 in campaign contributions to McCabe and to reimburse, through one of his or her companies, an additional $1,500 contribution to McCabe. (*Id.* ¶¶ 50–54.) Conspirator #2 made an additional $2,500 contribution to McCabe through another corporate entity. (*Id.* ¶ 51.) McCabe, meanwhile, never reported the contribution from Boyle in his required campaign disclosures. (*Id.* ¶ 55.) The indictment alleges that McCabe and Boyle engaged in this series of transactions "to conceal their bribery relationship." (*Id.* at 29 ¶ 8.)

Both defendants argue that Count 11 is infirm because it does not rest on a proper allegation of bribery. This assertion is without merit. For the reasons appearing above, the indictment sufficiently alleges that Boyle gave McCabe things of value in exchange for official acts favorable to Boyle on a contract for medical services at the Norfolk jail. *See supra* Part I. To the extent that this unlawful *quid pro quo* arrangement rested on a stream of benefits, at least four circuits have concluded that stream-of-benefits bribery remains unlawful following *McDonnell. See United States v. Silver*, — F.3d —, 2020 WL 284426, at *12 (2d Cir. Jan. 21, 2020); *Woodward v. United States*, 905 F.3d 40, 46 (1st Cir. 2018); *United States v. Suhl*, 885 F.3d 1106, 1115 (8th Cir.), *cert. denied*, 139 S. Ct. 172 (2018); *United States v. Repak*, 852 F.3d 230, 251 (3d Cir. 2017). That conclusion is entirely consistent with governing law in the Fourth Circuit. *See United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998).

To the extent the defendants argue that Count 11 is improper because it fails to allege bribery based on campaign contributions, that argument fails as well.  As explained above, *see supra* Part II, the indictment complies with the requirements of *McCormick v. United States*, 500 U.S. 257 (1991).  More specifically, *McCormick* directs that in cases involving bribery based on campaign contributions, there must be proof of "an explicit promise or undertaking by the official to perform or not to perform an official act."  *Id.* at 273.  As three circuits have held, "explicit" in this context does not mean "express"—that is, spoken aloud or written down—but instead means that the agreement must be clear and unambiguous as to its terms.  *See United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011); *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994); *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992).[8]

The Sixth Circuit's *Blandford* opinion is especially instructive, reasoning that "explicit" simply means "[n]ot obscure or ambiguous, having no disguised meaning or reservation; [c]lear in understanding."  33 F.3d at 696 n.13 (quoting *Explicit*, Black's Law Dictionary (6th ed. 1990)) (emphasis removed; punctuation modified).  The indictment satisfies this definition by alleging a clear *quid pro quo* agreement between Boyle and McCabe regarding one agenda item only—the medical-services contract at the Norfolk jail.  Nothing further is required.[9]

In part, the defendants' motions argue that proving campaign-contribution bribery through a stream of benefits threatens to impinge on the legitimate First Amendment concerns identified by *McCormick* and related cases.  *See McCormick*, 500 U.S. at 272 (cautioning against a rule that would "open to prosecution not only conduct that has long been thought to be well

---

[8] *But see United States v. Ganim*, 510 F.3d 134, 142 (2d Cir. 2007) ("[P]roof of an express promise is necessary when the payments are made in the form of campaign contributions.").

[9] Boyle's ancillary request for a bill of particulars fails for similar reasons.  *See infra* Part V.

within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures"). And indeed, in a case where the purported *quid pro quo* agreement was wide-ranging or otherwise open-ended, those concerns might have merit. But *here*, the indictment alleges a narrow bribery arrangement arising solely from contracts at the Norfolk jail. It also further reifies the specificity of that agreement by noting numerous instances in which McCabe corrupted the procurement process in order to ensure that benefits derived from official acts flowed to his bribe payors. (*See* Indict. at 3 ¶ 10 (McCabe shared confidential bid information with Conspirator #1); *id.* at 7 ¶ 22 (McCabe manipulated a bid-related meeting to conceal his prior relationship with Boyle from his colleagues); *id.* ¶ 23 (McCabe directed an employee to provide confidential bid information to Boyle); *id.* at 10 ¶ 36 (McCabe sent Boyle a draft RFP for a rebid of the medical-services contract from his personal email account); *id.* at 11 ¶ 40 (McCabe directed an employee to contact Boyle's company with confidential bid information after Boyle's company failed to submit the lowest bid).)

In short, the indictment alleges a *quid pro quo*, stream-of-benefits arrangement that satisfies *McCormick*'s explicitness requirement. Count 11 therefore rests on solid footing.

**B.     Count 11 does not present a merger problem because bribery and money laundering to conceal bribery are distinct offenses.**

Boyle also argues that Count 11 is defective because the conduct relating to his $12,500 campaign contribution is not sufficiently distinct from the underlying bribery offense. This argument conflates two things that are entirely separate—*i.e.*, an unlawful *quid pro quo* arrangement and efforts taken after the fact to conceal that arrangement through specious financial transactions.

In a merger case, the relevant inquiry turns on whether the specified unlawful activity generated proceeds prior to the money laundering and whether the money laundering actually involved those criminally-derived proceeds. *United States v. Bolden*, 325 F.3d 471, 488 (4th Cir. 2003). The analysis involves both criminally-derived proceeds and financial transactions designed to cleanse those proceeds. *See United States v. Butler*, 211 F.3d 826, 829 (4th Cir. 2000). And, to be clear, the law does not require that the underlying criminal activity be completed before the laundering operation begins. *Bolden*, 325 F.3d at 487–88. The funds are deemed to be criminally derived if they are arise from a completed phase of an ongoing offense. *Butler*, 211 F.3d at 829 (citing *United States v. Conley*, 37 F.3d 970, 980 (3d Cir. 1994)). Further, the laundered money can become the proceeds of fraud as soon as it enters the hands of members of the scheme. *Id.* (citing *United States v. Morelli*, 169 F.3d 798, 800 (3d Cir. 1999)).

Boyle's argument fails because it depends on an incorrect understanding of when a bribery transaction is complete. With respect to a bribe recipient, "acceptance of the bribe is the violation of the statute." *United States v. Brewster*, 408 U.S. 501, 526 (1972). And with respect to a bribe payor, "the offer of the bribe is the violation of the statute." *United States v. Ring*, 706 F.3d 460, 467 (D.C. Cir. 2013). These same principles apply to offenses relating to bribery, such as honest-service mail fraud and Hobbs Act extortion under color of official right. *See, e.g.*, *Evans v. United States*, 504 U.S. 255, 268 (1992) (recognizing that the crime of extortion under color of official right is "completed at the time when the public official receives a payment in return for his agreement to perform specific official acts"); *Suhl*, 885 F.3d at 1113 ("A payor defendant completes the crime[] of honest-services … bribery as soon as he gives or offers payment in exchange for an official act, even if the payee does nothing or immediately turns him

32

in to law enforcement."); *Ring*, 706 F.3d at 467 ("Because bribery does not require the official to agree to or actually complete a corrupt exchange, neither does honest-services fraud by bribery.").

The indictment clearly alleges that the $12,500 contribution underlying Count 11 was part and parcel of the defendants' "bribery relationship" (Indict. at 29 ¶ 8.), that McCabe "falsified his campaign filings to conceal" the bribery scheme (*id.* at 21 ¶ 13), and that "McCabe's campaign financial disclosure forms do not reflect Boyle's April 2016 campaign contribution to McCabe" (*id.* at 14 ¶ 55).  The indictment thus makes plain that the $12,500 contribution was an unlawful bribe payment from Boyle to McCabe provided in order to obtain official acts on the medical-services contract at the Norfolk jail.  To put an especially fine point on it, shortly after Boyle tendered the $12,500 check to McCabe, he emailed an employee to proclaim that "Sherriff McCabe is in a good place with us."  (*Id.* at 13 ¶ 48.)

Consistent with the principles outlined above, Boyle and McCabe were guilty of committing bribery the moment that the $12,500 check passed from Boyle's hands into McCabe's on the explicit understanding that it was offered and accepted in exchange for official acts.  Count 11 charges that McCabe, Boyle, and Conspirator #2 then took the *additional step* of using financial transactions to conceal their bribery relationship.  The money-laundering statute makes that separate conduct an independently punishable offense.

Two cases illustrate the point.  In *United States v. Boscarino*, 437 F.3d 634 (7th Cir. 2006), the Seventh Circuit considered whether concealment of a bribe payment could support a money-laundering charge.  In answering that question "yes," the Seventh Circuit framed the issue by referencing an earlier case involving a judge who accepted bribe payments in

relation to pending cases.  *See id.* at 636 (discussing *United States v. Murphy*, 768 F.2d 1518

(7th Cir. 1985)).  As the Seventh Circuit put it:

> Judge Murphy took money from litigants in cases over which he presided.  Doing
> this deprived the public of his honest services.  He did not take money from the
> public coffers, but the bribes were "proceeds" of the scheme to defraud, and if he
> had engaged in financial transactions with these proceeds Judge Murphy could have
> been convicted of money laundering as well as the scheme to defraud the public.

*Id.*  Exactly the same reasoning applies here.  By accepting bribes in exchange for official acts on

government contracts, McCabe deprived the citizens of Norfolk of his honest services.  The

further step of "engag[ing] in financial transactions with these proceeds" to conceal the bribery

arrangement, *id.*, is a separate crime.

The Ninth Circuit reached a similar conclusion in *United States v. Wilkes*, 662 F.3d 524

(9th Cir. 2011).  *Wilkes* recognized that some financial transactions are so connected to an

underlying fraud as to make a money-laundering charge duplicative.  *See id.* at 547 (discussing a

case where "defendants merely allocated the proceeds from a fraudulent sale of property through

relatively straightforward transactions").  But when a bribery conspirator engages in an "effort to

disguise the source of [a] kickback," for example, that person has committed "an additional act

that is separately punishable" as money laundering.  *Id.*  The Ninth Circuit emphasized that

"taking steps to make funds appear legitimate is the common meaning of the term 'money

laundering.'"  *Id.* (quoting *Regalado Cuellar v. United States*, 553 U.S. 550, 558 (2008)).  Thus,

where a defendant engages in a series of "convoluted" transactions designed to conceal a bribery

offense, *id.*, he is guilty of a separate crime.  That, of course, is precisely what the indictment

alleges.  By funneling Boyle's $12,500 campaign contribution through at least four straw donors,

McCabe was able to obtain the benefit of Boyle's illicit largesse without having to report the

donation on his campaign disclosures.

Accordingly, one of the key cases on which Boyle relies, *United States v. LaBrunerie*, 914 F. Supp. 340, 343 (W.D. Mo. 1995), is simply inapposite.  That case involved two defendants who conspired to bribe a city councilman.  The district court, accepting a report and recommendation from the magistrate judge, dismissed several related money-laundering counts. The magistrate judge reasoned that the money-laundering counts charged the defendants with concealing the *source* of the funds used to pay the bribes, as opposed to concealing the funds after they were in the control of the bribe recipient.  *See id.* at 347 (noting that "the common meaning of the word 'launder' is 'to wash,' which obviously means to make clean," and holding "that the acts alleged by the indictment make the money dirty, not clean" (footnote omitted)). But here, the point of funneling Boyle's contribution through straw donors was precisely to "clean" those contributions in order to make them appear legitimate—*i.e.*, free from the taint of the *quid pro quo* relationship with Boyle.

In short, because Count 11 charges the defendants with money laundering that is wholly separate from the underlying bribery, Boyle's merger argument fails.

**C.    Boyle's reliance on the Supreme Court's decision in *Santos* is misplaced.**

Boyle also argues that Count 11 violates the merger principles set down by *United States v. Santos*, 553 U.S. 507 (2008).  This claim is without merit.

In the first place, "Congress amended the money-laundering statute in May 2009; that amendment effectively overruled *Santos*, defining proceeds to include 'gross receipts.'" *United States v. Simmons*, 737 F.3d 319, 324 (4th Cir. 2013) (citing Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, § 2(f)(1), 123 Stat. 1617, 1618 (2009) (codified at 18 U.S.C. § 1956(c)(9)).  Because the $12,500 campaign contribution underlying Count 11 post-dated this amendment by several years, the defendant appears not to be making a true *Santos* argument but

35

rather relying on *Santos* to reframe his more general point about merger. *See, e.g.*, *United States v. Abdulwahab*, 715 F.3d 521, 531 n.8 (4th Cir. 2013) (noting that "[w]ith 'proceeds' now specifically defined, the [merger] issue … should not recur in many future cases").

In any event, even under the post-*Santos* case law Boyle's argument is unavailing. *Santos* considered whether the term "proceeds" in § 1956(a) meant "receipts" or "profit" in the context of an illegal gambling business. *Id.* at 509. Because no single rationale was able to earn the votes of five Justices, the Fourth Circuit later deemed Justice Stevens' concurring opinion to be controlling. *See United States v. Halstead*, 634 F.3d 270, 279 (4th Cir. 2011). On this understanding, *Santos* held that "proceeds" means "net profits" (and not "gross receipts") in the context of illegal gambling activity. *Id.* at 278. Otherwise, "any crime involving costs would automatically become money laundering when the money received from the crime was used to pay expenses." *Id.* Thus, other criminal offenses could present a merger problem under *Santos* "when the illegal activity include[d] money transactions to pay for the costs of the illegal activity." *Id.* at 279. But in a case like this, where the illegal activity generated proceeds before the money-laundering transactions occurred, no such merger problem exists.

The facts of *Halstead* are instructive. The defendant there fraudulently billed insurance companies for non-legitimate services for patients. 634 F.3d at 279. More specifically, he used a medical corporation under his control to complete the fraudulent billing, and the insurance companies and healthcare providers then paid the claims back to his corporation. *Id.* at 272–73. *Halstead* explained that "[a]t the moment that the healthcare provider paid money to [the defendant's corporation], the crime of healthcare fraud was complete." *Id.* at 280. But the defendant then made *additional* financial transactions in which he moved the money paid to his

company into other accounts, and the Fourth Circuit held that these transfers "were separate from the transactions constituting healthcare fraud." *Id.*

So too here. Because the underlying bribery transaction was complete when Boyle offered McCabe the $12,500 check (as the bribe payor), and when McCabe accepted that check (as the bribe recipient), there is no merger problem. To put it as succinctly as possible, if after obtaining the check McCabe had simply deposited it in his campaign account, he would still have been guilty of bribery. Boyle is therefore wrong when he asserts that the indictment "alleges the campaign donation as both an essential element of the honest-services-mail-fraud charges and the sole basis of the money-laundering charge." (ECF No. 43 at 19.) In reality, Count 11 does not rest solely on the bribery payment. Instead, it rests on the subsequent series of straw-donor transactions designed for the purpose of concealing McCabe's *quid pro quo* arrangement with Boyle. Because these transactions "were separate from the transactions constituting" bribery, *Halstead*, 634 F.3d at 280, there is no merger problem even under *Santos*, notwithstanding that *Santos* itself has been superseded by congressional amendment.

Accordingly, the Court should deny the defendants' motions to dismiss the money-laundering offense charged in Count 11.

## IV.  The Court should deny McCabe's motion *in limine* to exclude evidence that he used campaign contributions for his personal benefit.

McCabe has filed a motion *in limine* seeking to strike evidence that he (i) directed Sheriff's Office deputies to cash campaign contribution checks and return the funds to him and, (ii) lied on his campaign finance disclosure reports to conceal these actions. (ECF No. 37.) In his motion, McCabe argues that the Court should exclude this evidence under Federal Rules of Evidence 403 and 404(b) because its relevance is purportedly outweighed by its prejudicial value. The Court should deny this motion because evidence demonstrating how McCabe used

certain bribes—the campaign contributions—for his own personal benefit is highly relevant to his criminal intent and this probative value far outweighs any purported prejudicial effect. Moreover, this evidence is not uncharged 404(b) evidence, but is, in fact, charged conduct that is intrinsic to the story of McCabe's schemes to defraud.  However, if the Court were to conclude that it is 404(b) evidence, then the evidence should still be admitted because it is relevant, necessary, reliable, and satisfactory under Rule 403.

Although the Federal Rules of Evidence do not specifically provide for motions *in limine*, "their use has evolved under the federal courts' inherent authority to manage trials." *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  Litigants file motions *in limine* "to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *United States v. Verges*, No. 1:13-cr-222 (JCC), 2014 WL 559573, *3 (E.D. Va. Feb. 12, 2014) (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)).  It is within the district court's discretion whether to grant, deny, or hold in abeyance pending the evidence presentation at trial a party's motion to exclude evidence.  *Id.*

A motion *in limine* to exclude evidence should be granted only when the evidence is "clearly inadmissible on all potential grounds."  *Id.*  As *Verges* explained, this principle applies because "a court is almost always better situated during the actual trial to assess the value and utility of evidence."  *Id.* (citing *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-cv-275 (JCD), 2011 WL 5439156, at *1 (E.D.N.C. Nov. 8, 2011)).  As such, when deciding a motion *in limine*, a district court "may reserve judgment until trial so that the disputed evidence is placed in the appropriate factual context."  *Id.* (citing *Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F.

Supp. 276, 287 (S.D.N.Y. 1996)).  Applying these principles here, the government submits that McCabe's motion *in limine* must fail.

By way of background, Paragraph 35 of the indictment alleges that McCabe used Sheriff's Office deputies to obtain campaign funds that he could use for his own personal benefit and then details the method through which he concealed these activities.  Specifically, Paragraph 35 alleges:

> At various times throughout the conspiracy, McCabe wrote campaign checks made payable to Sheriff's Office deputies and directed them to cash the checks and return funds to him – or to his friend – for personal use.  To conceal his personal use of campaign funds, McCabe knowingly lied on his campaign filings.

(Indict. at 10 ¶ 35.)  Likewise, Paragraph 63 references numerous ways in which McCabe lied on his campaign finance disclosure reports to conceal his bribery scheme.  (*Id.* at 16 ¶ 63.)

At trial, the government intends to call certain Sheriff's Office deputies who will testify that McCabe wrote checks payable to them from his campaign account and that, at McCabe's direction, they cashed the checks and returned the money to him for his personal use.  On at least one occasion, a Sheriff's Office deputy cashed a check and, at McCabe's direction, gave the funds to McCabe's friend for her personal use.  Bank records corroborate the deputies' proposed testimony.  The government further intends to introduce the campaign finance disclosure reports—which McCabe himself previously completed and certified were accurate—into evidence at trial.  These disclosure reports are business records maintained by the Virginia Department of Elections, were public when McCabe served as the Sheriff, and demonstrate McCabe's efforts to conceal his personal use of his campaign contributions and his scheme to defraud the citizens of Norfolk of his honest services.  Because evidence of this *charged* conduct is highly probative of McCabe's intent, the government respectfully submits that his motion *in limine* should be denied.

### A.    McCabe's personal use of campaign funds is highly relevant evidence of criminal intent.

Rule 402 of the Federal Rules of Evidence provides that "[a]ll relevant evidence is admissible."  Federal Rule of Evidence 401 provides "that evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  As the Fourth Circuit has noted, relevance "typically presents a low barrier to admissibility."  *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003) (citing *United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998)).  To be admissible, evidence need only be "'worth consideration by the jury,' or have a 'plus value.'"  *Id.* (quoting *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997)).  Here, the proposed evidence clearly satisfies Rule 401.

The proposed evidence is worth consideration by the jury as it is highly relevant evidence of McCabe's criminal intent.  In this case, the government will have to provide evidence of McCabe's specific intent to defraud the public of its intangible right to his honest services.  *See, e.g.*, *Skilling v. United States*, 561 U.S. 358 (2010); *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008); *United States v. Godwin*, 272 F.3d 659, 666 (4th Cir. 2001).  And, a "not-guilty plea puts one's intent at issue."  *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997).  As such, evidence that sheds light on McCabe's corrupt intent—such as the method through which he accessed and concealed bribe payments—is extremely relevant and highly probative.

Likewise, McCabe's actions to conceal his personal use of campaign contributions by filing false campaign filings is powerful evidence of his intent to deprive the citizens of Norfolk of his honest services and his consciousness of guilt.  It is black-letter law both in the Fourth Circuit and elsewhere that evidence of concealment is probative of intent and consciousness of guilt.  *See, e.g.*, *United States v. Zayyad*, 741 F.3d 452, 463 (4th Cir. 2014) (attempt to conceal

indicated awareness of criminal intent); *United States v. Beverly*, 284 F. App'x 36, 40 (4th Cir.

2008) (noting that "intent can be inferred from efforts to conceal the unlawful activity") (internal

quotation omitted); *see also United States v. Rosen*, 716 F.3d 691, 702 (2d Cir. 2013); *United*

*States v. Hart*, 273 F.3d 363, 373–74 (3d Cir. 2001); *United States v. Davis*, 490 F.3d 541, 549

(6th Cir. 2007); *United States v. Zichettello*, 208 F.3d 72, 105 (2d Cir. 2000).  In fact, fraud itself

is frequently defined to include "acts taken to conceal, create a false impression, mislead, or

otherwise deceive."  *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000).  This is

particularly true where, as here, through the filing of false campaign reports, McCabe sought to

create a false impression among the electorate that he was not using his official position for

personal gain.  As such, the proposed evidence is highly relevant and should be admitted at trial.

> **B.**      **McCabe does not identify any risk of *unfair* prejudice arising from the challenged evidence.**

Contrary to McCabe's assertions, the proposed evidence does not implicate any

legitimate 403 concerns because the evidence is not *unfairly* prejudicial.  Unfair prejudice is

defined as "a genuine risk that the emotions of a jury will be excited to irrational behavior, and

that the risk is disproportionate to the probative value of the offered evidence."  *United States v.*

*Udeozor*, 515 F.3d 260, 264 (4th Cir. 2008); *see also* Fed. R. Evid. 403, advisory committee note

(providing that "unfair prejudice" means "an undue tendency to suggest decision on an improper

basis, commonly, though not necessarily, an emotional one").  As the Fourth Circuit has

explained, "'unfair prejudice under 403 does not mean the damage to a defendant's case that

results from the legitimate probative force of the evidence.'"  *United States v. Mohr*, 318 F.3d

613, 619 (4th Cir. 2003) (citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal

Evidence § 404.21[3][b])).  Instead, Rule 403 "only requires suppression of evidence that results

in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value." *Id.*

Here, McCabe's motion does not even attempt to describe the type of alleged "unfair prejudice" that would arise from the admission of this highly relevant evidence directly probative on the issue of intent. There is no legitimate suggestion that this evidence will waste time or confuse the jury. The proposed evidence is simple, direct, and easy to present. The evidence is not meant to inflame the jury's prejudices. To the contrary, it is highly relevant evidence of McCabe's corrupt intent to enrich himself at the expense of the citizens of Norfolk.

In short, McCabe does not seek to exclude this evidence because of any alleged unfair prejudice that might arise, but simply because the probative value of the proposed evidence is so strong. The government agrees that the proposed evidence is extremely compelling and prejudicial to the defendant insofar as it demonstrates that he manipulated his employees (themselves public officials) to obtain bribe proceeds for his own personal purposes and then lied on public campaign forms to conceal his actions. But that is the case with all of the government's evidence. As the Seventh Circuit has explained, "[t]he vast majority of the government's evidence against a defendant is prejudicial to him. That's the idea." *United States v. Gougis*, 432 F.3d 735, 743 (7th Cir. 2005) (citations omitted); *see also United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) ("The mere fact that the evidence will damage the defendant's case is not enough—the evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence.").

Simply put, there is no substantial or unfair prejudice from admitting the proposed evidence at trial. To the contrary, the only real prejudice from the evidence is that it tends to prove the defendant's specific intent to defraud the citizens of Norfolk of their right to his honest

services.  The Fourth Circuit has already made clear that such prejudice is neither *unfair*, nor does it require exclusion of the evidence.

### C.     The evidence is not subject to Rule 404(b)'s limitations on proof of prior bad acts because it is intrinsic to the charged bribery schemes.

In seeking to limit the government's evidence at trial, McCabe incorrectly refers to it as uncharged 404(b) evidence.  This is simply not the case.  "Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'"  *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (internal citations omitted); *see also United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) ("Evidence intrinsic to the story of the crime does not fall under Rule 404(b)'s prohibition").

The proposed evidence outlined above is not 404(b) evidence for several reasons.  First, the evidence is not "uncharged conduct."  To the contrary, the grand jury returned an indictment that includes references to this highly relevant evidence. (*See, e.g.*, Indict. at 10 ¶ 35.)  Second, the conduct clearly "arose out of the same series of transactions as the charged offense."  In a case involving bribes in the form of campaign contributions, McCabe's surreptitious methods for procuring the funds for his personal use and for concealing such use arose directly from the same series of actions that provide the basis for his bribery scheme.  Finally, the evidence of McCabe's personal use and concealment of the bribes is evidence that is necessary to complete the story at trial.  It is the conclusion of the story and explains precisely how McCabe was able to continue to engage in the schemes for a decade.  Without such evidence, the jury may be left with the incorrect impression that McCabe used all of the campaign contributions to support his campaigns.  That is simply not true.  McCabe's personal use of the campaign contributions

explains why the *quid pro quo* arrangements in this case involved solicitation of campaign contributions.

For these reasons, McCabe's argument that the proposed evidence should be struck as uncharged 404(b) evidence has no legal or factual basis and should be rejected.

### D.      Alternatively, the proposed evidence is admissible under Rule 404(b).

Even if the aforementioned evidence is not deemed intrinsic and is therefore subject to the strictures of Rule 404(b), then it is still admissible.[10]  To be admissible under Rule 404(b), evidence of prior acts must be:  (1) relevant to an issue other than character; (2) necessary or probative of an essential claim or an element of the crime charged; (3) reliable; and (4) admissible under Rule 403.  *See United States v. Queen*, 132 F.3d 991, 995–97 (4th Cir. 1997). For the reasons stated above, the first, second, and fourth prongs of this test are satisfied.  As to reliability, the applicable standard is "remarkably broad."  *United States v. Zeleke*, 811 F. Supp. 2d 1232, 1239 (E.D. Va. 2011).  "Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror."  *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008).  Here, the proposed evidence is reliable as it involves testimony from McCabe's prior employees corroborated by bank records and business records from the Virginia Department of Elections.  As such, the proposed evidence satisfies the *Queen* factors and should, alternatively, be admitted as 404(b) evidence.

Accordingly, McCabe's motion *in limine* should be denied.

---

[10] Under the terms of the discovery order, the government is not obligated to provide the defendant with notice of its intention to introduce Rule 404(b) evidence until seven calendar days before trial.

**V.      The defendants have not satisfied the requirements for obtaining a bill of particulars.**

Defendant McCabe has moved for a bill of particulars with respect to Paragraphs 13, 17 and 41 of the General Allegations section of the indictment, which are realleged and incorporated by reference in Counts 1–11.  (ECF No. 35.)  In his memorandum of law in support of his motions to dismiss Count 11 and to strike campaign contribution allegations from the indictment, defendant Boyle requests a bill of particulars if his motions are denied.  (ECF No. 43.)  These motions should be denied.

The indictment as a whole, as well as the specific allegations set forth in Paragraphs 13, 17 and 41 of the indictment, and Count 11, all comply with Rule 7 of the Federal Rules of Criminal Procedure, which requires only that an indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged."  The purpose of a bill of particulars "is to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 934–35 (4th Cir. 1973).  Accordingly, if these purposes have already been satisfied, as they have in this case by a detailed indictment and the substantial discovery provided to the defendants by the government, there is no basis for ordering a bill of particulars.  As the Fourth Circuit has held, "[a] bill of particulars is not to be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985); *see also United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982) (stating that "even a bill of particulars cannot be required to compel revelation of the full theory of the case or all of the evidentiary facts").

Here, the indictment is a model of particularity.  The defendants have been provided with more than adequate information for the charges to be understood and for unfair surprise to be avoided at trial.  The underlying facts and circumstances of the charged offenses are set out in great detail.  All eleven counts incorporate by reference the General Allegations section of the indictment, which includes 63 paragraphs, including sections entitled "McCabe's *Quid Pro Quo* Relationship with Conspirator #1" and "McCabe's *Quid Pro Quo* Relationship with Boyle." Paragraphs 13 and 17 of the General Allegations section list many things of value, including campaign contributions, that Boyle agreed to give to Conspirator #1 and McCabe, respectively, in exchange for which McCabe agreed to exercise his official authority to take actions that were favorable to Conspirator #1 and Boyle's companies in connection with their respective jail contracts.  Paragraphs 8–59 meticulously chronicle the alleged illicit transactional relationships and knowing course of conduct between the parties, including the official actions taken by McCabe that were favorable to Conspirator #1 and Boyle with respect to those contracts.

Moreover, in this case the government has entered into a reciprocal discovery order and agreed to comply with all of its discovery obligations.  In fact, the government has already provided defense counsel with substantial discovery material, and has even gone beyond its discovery obligation by including copies of summaries of the interviews conducted by law enforcement agents of numerous potential government witnesses, even though the disclosure of those summaries are not required under Rule 16 of the Federal Rules of Criminal Procedure.  *See* Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.")  At trial the government will not introduce a single document that it has not produced in advance to defense counsel for inspection and/or copying.

46

Accordingly, given the extensive detail set forth in the indictment as well as the substantial discovery that has already been provided to the defendants by the government, it is clear that the degree of detail about the case that is known by the defendants is more than adequate for them to understand the charges, prepare for trial and avoid unfair surprise. Therefore, there is no basis for ordering a bill of particulars and the defendants' motions should be denied.

**VI.     The Court should deny Boyle's motion to sever.**

Finally, Boyle has moved to sever Counts 1, 3, 4, and 8.  (ECF No. 46.)  He asserts both that the indictment improperly joins these counts and that "a joint trial of the counts against Mr. Boyle with the counts against Mr. McCabe would cause undue prejudice."  (*Id.*)  Because the indictment properly joins defendants and counts, and because the risk of spillover prejudice in this case is minimal, the Court should deny the motion.

**A.     The indictment charges two distinct bribery schemes.**

As an initial matter, summarizing the structure of the charges in the indictment will help situate this case within the broader doctrine governing joinder and severance.

The indictment describes two parallel schemes to commit bribery offenses.  In the first, Conspirator #1 and McCabe entered an unlawful *quid pro quo* arrangement whereby Conspirator #1 provided McCabe with things of value and, in exchange, McCabe took official acts relating to a food-services contract at the Norfolk jail.  In the second, Boyle provided McCabe with things of value and, in exchange, McCabe took official acts relating to a medical-services contract at the Norfolk jail.  (*Compare* Indict. at 3–5 (summarizing the food-services scheme), *with id.* at 5–15 (summarizing the medical-services scheme).)  The 11 counts break down as follows:

47

*Table 1:  Counts in the Indictment Organized by Bribery Scheme*

|  | Food-Services Scheme (Conspirator # 1) | Medical-Services Scheme (Boyle) |
|---|---|---|
| Conspiracy to commit honest-services mail fraud | Count 1 | Count 2 |
| Substantive honest-services mail fraud | Counts 3 and 4 | Counts 5, 6, and 7 |
| Conspiracy to commit Hobbs Act extortion | Count 8 | Count 9 |
| Substantive Hobbs Act extortion | Count 10 (as to McCabe) | Count 10 (as to McCabe) |
| Conspiracy to Commit Money Laundering | --- | Count 11 |

McCabe is charged with all 11 counts across-the-board, whereas Boyle is charged only in Counts 2, 5–7, 9, and 11.  Conspirator #1 is not named as a defendant.  Notably, Count 10 charges McCabe with substantive Hobbs Act extortion based on a continuing course of conduct between January 1994 and December 2016 relating to *both* the food-services scheme *and* the medical-services scheme.  *See United States v. Burfoot*, 899 F.3d 326, 337–38 (4th Cir. 2018) (holding that a single course of Hobbs Act extortion, involving numerous extortionate acts, may be charged as a single continuing offense).

## B.    The indictment properly joins counts and defendants.

Boyle first argues that the indictment violates Federal Rule of Criminal Procedure 8 by improperly joining counts and defendants.  This argument fails.

The Supreme Court has explained that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together," because such trials "play a vital role in the criminal justice system," "promote efficiency," and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993)

(internal quotation marks omitted). Likewise, the Fourth Circuit has explained that "Rule 8 'permit[s] very broad joinder ... at the pleading stage.'" *United States v. Cannady*, 924 F.3d 94, 102 (4th Cir. 2019) (quoting *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003)).

Rule 8 contains two different sub-provisions. Under Rule 8(a), joinder of *counts* is permissible against a single defendant "if the offenses charged … are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Under Rule 8(b), joinder of *defendants* is permissible "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Separate offenses are considered to be acts within the same series "if they arise out of a common plan or scheme … unified by some substantial identity of facts or participants." *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987). Rule 8(b) further specifies that "[a]ll defendants need not be charged in each count."

The indictment complies with these requirements. McCabe does not challenge the joinder of counts, which is permissible under Rule 8(a) because the indictment relates to offenses "of the same or similar character"—*i.e.*, two distinct (but parallel) bribery schemes. *See United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005) (joinder is permissible under Rule 8(a) "when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise"). And McCabe and Boyle can clearly be charged together under Rule 8(b) because "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses"—*i.e.*, the medical-services scheme.

49

At bottom, Boyle's argument is that an indictment cannot charge two distinct conspiracies in circumstances where not every defendant participated in both schemes.  Boyle thus seeks two trials, one against McCabe for the food-services scheme involving Conspirator #1 and one against McCabe and Boyle for the medical-services scheme.[11]  But Rule 8 nowhere requires this result, a fact supported by its clear guidance that "[a]ll defendants need not be charged in each count."  Fed. R. Crim. P. 8(b).  Moreover, while there is little precedent in the Fourth Circuit addressing this issue in the context of white-collar offenses, other circuits have considered the issue and held that joinder may be appropriate in multiple-conspiracy cases depending on the nature of the alleged schemes and the degree of overlap between them.  In the government's view, this case falls on the permissible side of the line.

Perhaps the most detailed discussion of this issue comes from then-judge Sotomayor in *United States v. Rittweger*, 524 F.3d 171 (2d Cir. 2008).  There, as here, the indictment charged offenses arising from two distinct conspiracies.  The first involved a $210 million securities fraud in the form of a Ponzi scheme.  *Id.* at 175.  The second was a securities-fraud scheme involving misrepresentations about a Japanese financial firm and its degree of investment in the defendants' business.  *Id.* at 175–76.  Some defendants participated in both schemes, but several others participated in only one.  Two of those single-scheme defendants appealed their convictions "on the grounds that the indictment alleged unrelated conspiracies and that they suffered undue prejudice as a result."  *Id.* at 176–77.  The Second Circuit rejected that claim and affirmed.

---

[11] To the extent that Boyle argues that he and McCabe should be tried separately even as to the medical-services scheme, that argument is entirely without merit.  Boyle does not cite any case standing for the proposition that a bribe payor and bribe recipient should be tried separately, and indeed, such a rule would contravene the strong presumption in favor of joint trials in the federal system. *Zafiro*, 506 U.S. at 537.

In concluding that joinder was proper, the Second Circuit reasoned that both schemes "were efforts to induce [the defendants'] customers to invest cash, securities, and other assets in the [defendants' business]." *Id.* at 177. These common goals and tactics meant that there was enough of "a 'common plan or scheme,' and there [was] a 'substantial identity of facts or participants,' to conclude that initial joinder was permissible under Rule 8(b)." *Id.* at 177 (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989)). The Second Circuit thus rejected the defendants' assertion "that as members of two distinct conspiracies, they should not have been joined as defendants in the same trial because the conspiracies were not and could not have been charged as a single conspiracy." *Id.* To the contrary, the Second Circuit held that "[t]he language of Rule 8(b) … does not require such a rigid application." *Id.* Instead, "whether the joinder of defendants in two conspiracies is warranted must be determined on a case-by-case basis." *Id.* at 178.

The Second Circuit's reasoning in *Rittweger* applies equally to these facts. Here, too, the charged schemes had the same goal—*i.e.*, to use bribery to obtain lucrative government contracts. And, as in *Rittweger*, the schemes had similar modalities: lining McCabe's pockets, and funding his campaigns, in exchange for official acts. In such circumstances, neither the plain text of Rule 8 nor its underlying policy rationale requires separate trials.[12]

Similarly, both the Fifth and the Seventh Circuits have concluded that joinder of defendants in distinct conspiracies may be proper depending on the structure of the indictment. As the Fifth Circuit has put it, "defendants charged with two separate—albeit similar— conspiracies having one common participant are not, without more, properly joined." *United*

---

[12] Indeed, this case is arguably *more* straightforward than *Rittweger* because Conspirator #1 is not named as a defendant, so there is no possibility of spillover prejudice as between two defendants who participated in wholly separate schemes.

*States v. Welch*, 656 F.2d 1039, 1049 (5th Cir. Unit A 1981).  Even so, the Fifth Circuit has held

that joinder is appropriate where a conspiracy, even one not involving all defendants, is alleged

as a predicate in an overarching RICO count.  *See id.* at 1051; *see also United States v. Whitfield*,

590 F.3d 325, 355 (5th Cir. 2009) (affirming joinder where two defendants "were charged for

their participation in two separate bribery schemes linked only by [a third defendant's]

involvement in both," where those defendants' charges were predicate acts in the third

defendant's overarching RICO count).  The Seventh Circuit has reached a similar conclusion.

*See United States v. Stillo*, 57 F.3d 553, 557 (7th Cir. 1995).  Here, too, there is one overarching

charge:  Count 10, which alleges a 22-year course of Hobbs Act extortion under color of official

right against McCabe based on *both* the food-services scheme *and* the medical-services scheme.

(*See* Indict. at 27 ¶ 1 (incorporating earlier allegations).)  Joinder is thus proper here for precisely

the same reason it was proper in *Welch*, *Whitfield*, and *Stillo*—namely, the structure of the

indictment links the two alleged schemes.

The cases cited by Boyle are not to the contrary.  For example, Boyle relies heavily on

*United States v. Chinchic*, 655 F.2d 547 (4th Cir. 1981), a case involving two different

burglaries, but close attention to the structure of the charging instrument in that case underscores

its dissimilarity to the present facts.  Count 1 in *Chinchic* involved a burglary in April 1977 in

which two defendants had participated.  Count 2 charged one of those defendants, but not the

other, with conduct arising from a second burglary in May 1977.  Count 3 charged yet a third

defendant with receiving the goods from the second burglary.  *Id.* at 548.  Two of the defendants

argued that, while Counts 2 and 3 could be tried together, joinder of Count 1 was impermissible.

The Fourth Circuit agreed.  It reasoned that, "[a]t most, the government showed that there were

two burglaries involving some of the same defendants," but this alone, absent "a showing that

the burglaries were *in other manner connected*," could not "operate as the basis for joinder of defendants." *Id.* at 551 (emphasis added).

On its face, then, *Chinchic* is not incompatible with *Rittweger*. Like the Second Circuit, the Fourth Circuit adopted a case-specific approach that examines the degree of connection between distinct offenses. While there was insufficient connection to justify joinder in *Chinchic*, this case differs in at least three key respects. First, the offenses in this case were long-term schemes involving the same modalities—years of illicit payments, official acts, and subterfuge. Thus, the similarities between the food-services scheme and the medical-services scheme here are more pronounced than the similarities between the two burglaries in *Chinchic*.[13] Second, the two schemes in this case had one person at their apex—McCabe, whose complicity in the alleged bribery arrangements was necessary to the schemes' success. *Chinchic*, by contrast, never suggested that the defendants' burglaries were committed, for example, at the direction of a common boss. And third, there was no overarching count in *Chinchic* that linked the two burglaries. But here, where Count 10 charges McCabe with Hobbs Act extortion based on conduct relating to both schemes, the structure of the charges itself counsels in favor of joinder. The case is thus closer to *Welch*, *Whitfield*, and *Stillo* than to *Chinchic*.

For these reasons, joinder of defendants and counts in the indictment complies with Rule 8 and Boyle's misjoinder argument is unavailing.

---

[13] *See also United States v. Whitehead*, 539 F.2d 1023, 1026 (4th Cir. 1976) ("Where the *only nexus* between two defendants joined for trial is their participation in similar offenses, on different dates, with common third defendant, the 'same transaction' or 'series of transactions' test of Rule 8(b) is not satisfied and joinder is impermissible.") (emphasis added). Here, the "nexus" between the two charged schemes exceeds a single common defendant.

## C.    The Court can easily minimize any risk of spillover prejudice.

Even if joinder is proper, a defendant may move for severance under Federal Rule of Criminal Procedure 14.  A district court may sever a joint trial "[i]f the joinder of offenses or defendants … appears to prejudice a defendant or the government."  Fed. R. Crim. P. 14(a).

A defendant filing a severance motion under Rule 14 faces "a difficult task."  *United States v. Blair*, 661 F.3d 755, 768 (4th Cir. 2011).  In general, "defendants who are indicted together are tried together."  *United States v. Zelaya*, 908 F.3d 920, 929 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 855 (2019).  The party seeking severance "bears the burden of demonstrating 'a strong showing of prejudice.'"  *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008).  A district court should thus grant a severance motion "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *United States v. Qazah*, 810 F.3d 879, 891 (4th Cir. 2015) (quoting *Zafiro*, 506 U.S. at 539).  A district court's disposition of a severance motion is reviewed for abused of discretion.  *Mackins*, 315 F.3d at 412.  Even if the Fourth Circuit concludes that an abuse of discretion occurred, it will only vacate a defendant's conviction when there has been a showing of "clear prejudice."  *Zelaya*, 908 F.3d at 929.

Boyle's severance motion does not satisfy these standards because he has not demonstrated "a serious risk" that a joint trial will prejudice him.  *Qazah*, 810 F.3d at 891.  His argument is that the jury will (i) conclude that McCabe is guilty of offenses relating to the food-services scheme, (ii) reason that McCabe's guilt on those offenses makes him likelier to have participated in the medical-services scheme, and (iii) conclude that Boyle, too, must also be guilty of offenses arising from that scheme.  That speculative chain of reasoning is not persuasive.

In the first place, the Court is entirely capable of instructing the jury that it should consider the evidence on each count separately and should not impute guilt on one scheme from evidence relating to the other.  The Supreme Court has stated "less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice" in a joint trial.  *Zafiro*, 506 U.S. at 539.  The Fourth Circuit's cases are in accord.  *See, e.g.*, *United States v. Mir*, 525 F.3d 351, 357–58 (4th Cir. 2008) ("[A]ny prejudice resulting from a single trial on multiple counts can be cured by other, less restrictive means than severance."); *Cardwell*, 433 F.3d at 388; *Mackins*, 315 F.3d at 415.  Moreover, prejudice is especially unlikely when "there are few defendants," *United States v. Lane*, 474 U.S. 438, 450 n.13 (1986), because in such circumstances juries can easily "compartmentalize the evidence" relating to each defendant, *United States v. Lighty*, 616 F.3d 321, 351 (4th Cir. 2010).  In a two-defendant trial, the risk of spillover prejudice is especially minimal.

Second, the government rejects Boyle's repeated contention that he is "minor" defendant likely to be prejudiced by the "vastly disproportionate" evidence against McCabe.  (ECF No. 47 at 7.)  The indictment makes plain that McCabe participated in two bribery schemes in parallel, but those schemes mirrored each other in nearly every respect.  Likewise, neither scheme could function without a bribe payor (Conspirator #1 and Boyle) and a bribe recipient (McCabe).  Thus, Boyle is not some ancillary participant.  As alleged in the indictment, he was an indispensable player in the alleged misconduct.  (*See, e.g.*, Indict. at 8 ¶ 26 (Boyle arranged for McCabe to attend a country-music concert); *id.* ¶ 29 (Boyle directed an employee to provide football tickets to McCabe); *id.* at 9 ¶ 32 (Boyle solicited a check for McCabe's reelection in an email about how "our contract is out to bid"); *id.* at 12 ¶ 43 (Boyle provided McCabe with an undocumented $6,000 cash "loan" on which McCabe never made any payments).)  There is no

reason to believe that the jury will be unable to keep track of Boyle's actions relative to those of the other key figures at the trial.

Third, whether and to what extent a joint trial creates a risk of prejudice depends, in part, on how the trial is conducted. For example, even as the Second Circuit affirmed the convictions in *Rittweger*, it noted that the government had muddled matters by "lumping together of all of the conspirators during its rebuttal summation." 524 F.3d at 180. The government is acutely aware of its "independent obligation to consider the unfairness that may result from joinder," *id.*, and will endeavor to present and argue the evidence with its obligations firmly in mind.

Accordingly, Boyle has not succeeded in "the daunting task of demonstrating that there [is] 'a serious risk that a joint trial would ... prevent the jury from making a reliable judgment about guilt or innocence.'" *Blair*, 661 F.3d at 770 (quoting *Zafiro*, 506 U.S. at 539). The Court should therefore exercise its discretion to deny Boyle's severance motion.

## Conclusion

The indictment properly alleges that McCabe used his official position as the Sheriff of Norfolk to enrich himself and to fill his campaign coffers based on unlawful *quid pro quo* arrangements with Boyle and Conspirator #1. The defendants' additional pretrial motions are unavailing for the reasons appearing above. The Court should therefore deny the defendants' motions to dismiss, to limit the government's trial evidence, to obtain a bill of particulars, and to sever (ECF Nos. 34–35, 37–39, 42, 44, 46), and this matter should proceed to trial.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


By:  _____/s/_____

Melissa O'Boyle
Alan M. Salsbury
Randy C. Stoker
Daniel T. Young
Assistant United States Attorneys
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office:   (757) 441-6331
Fax:      (757) 441-6689
Email:    melissa.oboyle@usdoj.gov
          alan.salsbury@usdoj.gov
          randy.stoker@usdoj.gov
          daniel.young@usdoj.gov

**Certificate of Service**

I hereby certify that on February 18, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

By:             /s/

           Daniel T. Young
           Assistant United States Attorney
           United States Attorney's Office
           101 West Main Street, Suite 8000
           Norfolk, Virginia 23510
           Office:   (757) 441-6331
           Fax:     (757) 441-6689
           E-mail:  daniel.young@usdoj.gov